[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR ASSIGNMENT OF LAW DAYSAND DEFENDANTS' REQUEST FOR A NEW TRIAL
Before the court is the plaintiff's motion for assignment of law days opposed by the defendant and accompanied by the defendants' own motion for a new trial.
The relevant facts are as follows. The plaintiff, Shawmut Bank Connecticut, N.A. f/k/a Connecticut National Bank (Shawmut) brought a foreclosure action against the defendant L R Realty when L R defaulted on a note secured by a mortgage on commercial property located in Colchester, Connecticut. Also named as defendants in the suit were Raymond and Gail LeFoll who were the general partners of L R and the guarantors of the note. In response to Shawmut's foreclosure action, L R commenced its own suit raising several lender-liability claims against the mortgagor. That suit, L R Realty v. Shawmut Bank,
No. 92-0522814, (hereinafter referred to as Shawmut II) was eventually consolidated with this foreclosure action (hereinafter referred to as Shawmut I) and tried before the court (Austin, J.) over an eight day period in January/February 1995. At the conclusion of the trial, post-trial briefs were ordered to be filed on or about May 1, 1995.
In a decision filed on June 20, 1995, the court granted the plaintiff's motion for strict foreclosure in Shawmut I and found against L R in favor of the lender in Shawmut II. In granting Shawmut's motions for strict foreclosure, however, the court CT Page 4332-QQ failed to set any law days. On July 7, 1995, the defendants appealed the findings and rulings of the court in Shawmut I and II. In an effort to get appropriate law days assigned in Shawmut I, the bank filed a motion for an assignment of the same with the trial court on July 17, 1995. Because the case was on appeal, however, the court (Hendel, J.) refused to set laws by an order dated July 21, 1995.
At the appellate level, however, Shawmut moved to dismiss the appeal of L R on the ground that a judgment of strict foreclosure which failed to set appropriate law days was not a final judgment for purposes of appeal. By a decision released on March 5, 1996, the Appellate Court dismissed L R's appeal in Shawmut I and held that, "[w]ithout the setting of law days, the time for redemption has not been limited and the parties' rights remain unconcluded as to that issue. As a result, a strict foreclosure judgment that is silent as to law days cannot be final for purposes of appeal." Connecticut National Bank v. L RRealty, 40 Conn. App. 492, 494 (1996).
A mere seven days after the appellate court's decision dismissing L R's appeal, Shawmut again filed a motion for assignment of law days on March 13, 1996. In its motion, Shawmut references General Statutes § 49-15 which states that:
 Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by 52-212a, upon such terms as to costs as the court deems reasonable; but no such judgment shall be opened after the title has become absolute in any encumbrance.
Relying on this statute, Shawmut claims that the court has the authority to open the judgment in order to set appropriate law days.
L R, however, vehemently disagrees and claims that this court is without jurisdiction to enter any law days. In support thereof, L R cites General Statutes § 52-270 (a) which states in part that, "[t]he superior court may grant a new trial of any action that may come before it, for mispleading . . . or for other reasonable cause, according to the usual rules in such CT Page 4332-RR cases. L R basic position, however, is that the court can not set law days in this case because to do so would violate General Statutes § 51-183b which requires "[a]ny judge of the superior court . . . who has the power to render judgment . . . shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil case."
Since the trial ended on or around May 1, 1995, L R claims that the court is unable to set law days because to do so would be to set a judgment more than one hundred and twenty days after the end of the trial. L R also faults Shawmut for not seeking appropriate stays of the 120 day period or seeking a motion for articulation from the trial court under the relevant Practice Book rules.
DISCUSSION
"[J]urisdiction over the person, jurisdiction over the subject matter, and jurisdiction to render the particular judgment are three separate elements of a court. . . . (Citation omitted; internal quotation marks omitted.) Bridgeport v. Debek,210 Conn. 175, 179, A.2d 728 (1989). "The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage of the proceeding." Brunswick v. InlandWetlands Comm'n, 222 Conn. 541, 549, 610 A.2d 1260 (1990).
A. PLAINTIFF'S MOTION TO SET LAW DAYS
The court finds L R's motion in opposition to the setting of new law days to be meritless. It is predicated on the fact that the trial court failed to set law days in its memorandum of decision dated June 20, 1995 and on the Appellate Court's dismissal of their appeal based on the same defect.
The trial court's decision specifically states that "Judgment of Strict Foreclosure may enter in favor of Shawmut Bank Connecticut, N.A., F/K/A The Connecticut National Bank in the foreclosure action against L R Realty and the guarantors LeFoll, et. ux." Clearly, this language demonstrates that the court entered judgment well within the 120 days after the trial ended. The only defect in its judgment was the fact that the court failed to set law days, and the Appellate Court relied on this fact in dismissing the appeal finding that "[b]ecause the court's decision in this case does not include the setting of law days, it is not a final judgment for the purpose of appeal."
CT Page 4332-SS (Emphasis added.) Id. 495. Thus, for appeal purposes, the judgment of the trial court was not final, but it was a judgment for the purpose of the trial court's statutory obligation to reach a decision in a civil case 120 days after the conclusion of the trial.
Furthermore, even if the trial court's judgment had been free of any technical defects, once the appeal was dismissed, the trial court by necessity would have had to reset the law days. As one authority on Connecticut foreclosures has stated:
 One of the distinguishing features of a defendant's appeal from a judgment of strict foreclosure is that a remand to the trial court is almost always required, even if the appeal resulted in a finding of no error in the entry of the original judgment. Since the taking of an appeal stays the passing of the law days, once the appeal is concluded the trial court must once again act on the case and set new law days.
D. Caron, Connecticut Foreclosures § 17.03 (2nd Ed. 1991) Since the trial court has the power to reset the laws days after an appeal has been concluded, the court reasonably infers that it has the like power to correct a technical defect in its original judgment by setting law days once an appeal is dismissed. While the Appellate Court did not specifically remand the case to the trial court to set laws days, the trial court must do so in order for that court to regain jurisdiction on appeal. To hold otherwise would leave this case in a legal no-mans-land where the trial court could not set laws days, and the appellate court could not review the decision. The defendants' contention that they are entitled to a new trial on the foreclosure action is unsupported in the law and in common sense. After eight days of trial, it would be a total waste of judicial resources for the foreclosure action to be tried again simply because of a technical error in the trial court's judgment that can be easily corrected without prejudice to either party. Therefore, the court concludes that it has subject matter jurisdiction to set law days in this case.
B. DEFENDANT'S MOTION FOR REASSIGNMENT FOR NEW TRIAL
In its opposition to the plaintiff's motion to set law days, the defendant has counter-moved for a new trial based on an CT Page 4332-TT alleged pecuniary interest that the court (Austin, J.) has with the plaintiff, Shawmut. The defendant claims that the judge violated the terms of Cannon 3C(1)(c) which states in part that:
 A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
. . .
 (c) the judge knows that he or she, individually or as a fiduciary . . . has a financial interest in the subject matter in controversy or in a party proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.
The defendant makes such an allegation based on the court's ownership of certificates of deposit (CDs) held by Shawmut. On January 13, 1995, the court, convened to hear pre-trial motions, stated on the record that:
 The Court: And before the Court entertains any comments or considers acting on the matters in any way, the Court wishes to indicate upon the record that mindful of the involvement here of Connecticut National Bank, which it is the Court's belief is now known as Shawmut Bank, although I may not have recited precisely the correct title, the Court indicates that there was a point in time several years ago when Shawmut took over a bank known as Home Bank and Trust or formerly Home National Bank and Trust which was situated in the City of Meriden, that the Court at that time was a stockholder in Home Bank, and subsequently, as a result of the takeover became a stockholder in Shawmut.
 In due course, the stockholder in due course, the shares of stock held by the Court in Shawmut were liquidated. And in the main, the proceeds therefrom were placed on deposit with Shawmut in the form of variety certificates of deposit which condition continues to the date hereof. CT Page 4332-UU
 And therefore, the Court feels that it is appropriate, and proper to disclose and make this known to counsel in order that they may express their opinion or make whatever motion or request they feel is proper on behalf of those that they represent as to the propriety of this jurist presiding over the proceedings.
And with that observation, I'll entertain whatever comment counsel would like to make.
(Emphasis added.) Tr. p. 2 3 1/13/95 (Plaintiff's exhibit A.) Based on Cannon 3 and General Statutes § 51-39
which requires a judge to disqualify himself from any proceeding "if he may receive a direct pecuniary benefit by the determination of any proceeding before him," the defendants claim that the court's disclosure of his interest in Shawmut was inadequate in that he failed to specify the amounts on deposit and that any waiver obtained by the counsel was also inadequate in that it (1) was not in writing and (2) that Mrs. LeFoll never properly waived.
Contrary to the defendants' assertion in its brief that the Court itself informed the parties of the disqualifying interest, the above quote demonstrates that the court was merely informing the parties of the depositor relationship between the court and Shawmut without any further categorization of the nature of the relationship or the effect that such a status would have on the court's ability to continue to preside over the case.
In fact, after this disclosure, counsel for the defendant stated:
 Mr. White: For the record, Frank White from the Law Offices of Michael F. Dowley, And I represent L R Realty, Gail LeFoll and Raymond LeFoll. Raymond LeFoll is in the courtroom with me today. After you disclosed that in chambers, we agreed you would put it on the record; and in the interim, I would speak with my client. We both feel that given the disclosure that you have made and the timely manner that you have made it, we discussed it, we find there's no problems. We are aware of you as a judge. We feel that this is worth noting only for the record, and for the record only. We find no problem with it whatsoever, your Honor. CT Page 4332-VV
Id. 4.
Shawmut's counsel, after the disclosure stated that:
 Mr. Dombroff: Based on the representation that we know your Honor, we have no objection to your proceeding. In the representation of my client, who is not in the courtroom, I obviously need to make the disclosure that you made to me. We perceive there will be no problem. If there should be any problem, I obviously will notify the Court on Monday — or Tuesday I guess because Monday is a holiday.
Id.
Three days after the disclosure, the court again gave the parties another opportunity to raise any objection that they might have had with respect to the judge's finances with Shawmut when it stated:
 The Court: Now, before we proceed any farther, mindful of the fact that as I view those who are with us this morning are not necessarily precisely the same individuals who were here last Friday, the Court acknowledges through the good offices of the clerk that there was a telephone call by a representative from Shawmut, formerly Connecticut National Bank, Counselor Evan perhaps, with regard to the fact that Shawmut made no request as to recusal by the Court based on the disclosure that the Court made on Friday. And Counsel, as I remember, kept their word that they would promptly call, but I just want to make sure that everything is still appropriate in the vein.
 Mr Evans: Yes, your honor. We did contact the clerk's office and did inform them that Shawmut has no objection to —
 The Court: Counselor White, my recollection is that you were agreeable and amenable, any possible change in posture on your part at the present time? CT Page 4332-WW
 Mr. White: No your honor, no change in posture. We are amenable. I acknowledged I received a call from Attorney Evan's office acknowledging that he had contacted the Court and instructed the Court that they had no objection to your being trial counsel either. So I would say that that issue is at rest.
Tr. pp. 2-3, 1/20/96.
Thus, contrary to the defendant's assertion in its brief that, "[t]he only time Ray [LeFoll] `waived his right was in court, with counsel and the judge participating. This is simply inadequate. The fear of retribution is so great in that circumstance that the waiver is not reliable. The Cannons recognize this," the parties actually had three days outside of the presence of the court to mull over any objections to the having the judge preside, and did not present any objection when asked a second time.
General Statutes 51-39 (c) states that "[w]hen any judge or family support magistrate is disqualified to act in any proceeding before him, he may act if the parties thereto consent in open court." Without reaching the issue of whether the CDs constituted a disqualifying interest, the transcript clearly shows that any alleged conflict was fully and fairly waived by all of the parties by and through their counsel. Furthermore, General Statutes 51-183d states that:
 If a judge acts in any legal proceeding in which he is disqualified, the proceeding shall not by reason thereof be void, but such action shall constitute an irregularity of which advantage may be taken by appeal or, where no appeal lies, by proceeding in error.
"As a general rule, even in cases alleging judicial bias, this court will not consider the issue on appeal where the party failed to make the proper motion for disqualification at trial. . . . A litigant must raise the question of disqualification in a timely and appropriate manner . . . or the claim will be deemed to have been waived. The rationale for this rule is that partiescannot be allowed to anticipate a favorable decision, reserving aright to impeach it or set it aside if it happens to be against them,for a cause which was well known to them before or during trial."
(Citations omitted; emphasis added.) Barca v. Barca, 15 Conn. App. 604,607-608 (1988). Based on the transcript, the parties were aware CT Page 4332-XX of the court's status as a CD depositor with Shawmut before the trial started, were given an opportunity to make any appropriate motions they saw fit, not once but twice, concerning this interest, and the defendants, through their counsel, did not raise any objection until post-judgment. Based on these facts and the rationale of Barca, the court deems the defendants' motion for a new trial as untimely and contrary to their former consent given in open court.
Therefore, the defendant's motion for a new trial is denied.
CONCLUSION
The plaintiff's motion to set law days is granted. Because almost a year has passed since the court has entered a judgment in this matter, all parties are ordered to appear in New London within four weeks from the date of this decision for the purpose of setting law days at the short calendar session. The plaintiff is ordered to have an updated appraisal, an updated affidavit of debt, and any other supporting documentation to assist the court in its findings.
The defendants' motion for a new trial is denied.
Austin, J.